UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

YEVETTE M. PAULDING Individually and as Parent
and Natural Guardian of JDF,

         **Hon. Hugh B. Scott**

       Plaintiffs,

           10CV712S

       v.         **Order**

CITY OF BUFFALO, et al.,

         Defendants.

_____

Before the Court is plaintiffs' motion to compel (Docket No. 28[1]).  Responses to this

motion were due by October 14, 2011, any reply was due by October 21, 2011, and the motion

was then deemed submitted (without oral argument) (Docket No. 31).

### BACKGROUND

This is a civil rights action alleging excessive force, unreasonable seizure, deprivation of

liberty, race discrimination, cruel and unusual punishment, negligent hiring and training, battery,

violation of Family Court Act, false arrest, and false imprisonment in the arrest of a fifteen-year-

old youth, JDF, and the arrest of his mother, Yevette Paulding, in Buffalo, New York (Docket

_____

[1]In support of this motion, plaintiffs submit their Memorandum of Law, Docket No. 28;
their attorney's declaration, with exhibits, Docket No. 29, their attorneys' amended declaration,
also with exhibits, Docket No. 30; and their attorney's reply declaration, Docket No. 34.
Defendants respond with their attorney's affidavits, Docket No. 32, 33 (amending certificate of
service for attorney affidavit).

No. 1, Compl.; Docket No. 20, Am. Compl.).  Familiarity with a previous Order regarding leave to amend pleadings (Docket No. 19) is presumed.

Plaintiff JDF was stopped by Buffalo Police Department Officer John Beyer on Shirley Avenue, Buffalo, New York, on May 31, 2009, who yelled for JDF to stop and, when he failed to do so, drove his patrol car in front of JDF, yelled for him to get to the ground immediately, and allegedly threw JDF to the ground, kicking and punching him (Docket No. 20, Am. Compl. ¶¶ 22-29).  JDF was handcuffed, placed in the patrol car, and taken to the E District headquarters, where he was allegedly yanked out of the car and interrogated without his parents or counsel present or being advised of his <u>Miranda</u> rights.  Officers did this "all the while using racial epithets."  (<u>Id.</u> ¶ 31.)  JDF then was transported down to Buffalo Police Department headquarters where officers continued to question him without his parents or counsel being present and with officers continuing to use racial epithets (<u>id.</u> ¶ 32).  JDF then was charged in Family Court with resisting arrest and obstruction of governmental administration but these charges were resolved by an adjournment in contemplation of dismissal and all charged eventually were dismissed (<u>id.</u> ¶¶ 33-35).

Meanwhile, JDF's mother, plaintiff Yevette Paulding, was handcuffed and taken into custody herself following the incidents with her son (<u>id.</u> ¶¶ 44, 37-43), without being advised of her rights or being told why she or her son were under arrest (<u>id.</u> ¶¶ 45-50).  Plaintiff was never charged (<u>id.</u> ¶ 52).

As amended, the Complaint names as defendants the City of Buffalo, Buffalo Police Officer Beyer, Lt. Leatherbarrow, and John Doe officers I through XIV, sued in their official and individual capacities (<u>id.</u> ¶¶ 4, 5, 6, 9-11, 12).  John Does I through IV are Buffalo Police

Department employees who were present during JDF's arrest, observing the arrest and allegedly failing to intervene (id. ¶¶ 9, 30-32).  John Does V through IX were other Buffalo Police Department employees stationed at E District headquarters, 2767 Bailey Avenue, Buffalo, New York[2], where JDF was initially transported (id. ¶¶ 10, 31); while John Does X through XIV were Buffalo Police Department employees stationed at Police Headquarters, at 74 Franklin Street, Buffalo, New York, where JDF was next taken (id. ¶¶ 11, 32).

Defendants (presumably the John Does) filed an Amended Answer to the Amended Complaint on April 7, 2011 (Docket No. 22; cf. Docket No. 4, Ans.).

*Plaintiffs' Motion to Compel*

Plaintiffs now move to compel complete answers to their Interrogatories and document demands from Lt. Leatherbarrow and Officer Beyer.  Specifically, plaintiffs want the disciplinary records of these two officers (Docket No. 30, Pls. Atty. Amended Decl. ¶¶ 3-6, Ex. A).  They asked in Interrogatories for the last ten years of litigation in which Beyer or Leather barrow were accused of applying excessive force (id. ¶¶ 8, 11, Ex. A).  Defendants invoked New York State Civil Rights Law § 50-a as precluding disclosure (id. ¶¶ 5, 7, 9, 12, Exs. B, C, D, F).  During Beyer's deposition, he was advised not to answer these questions due to the assertion of Civil Rights Law § 50-a (id. ¶ 13); Leatherbarrow's deposition had to be rescheduled by plaintiffs anticipate that Leatherbarrow would also invoke § 50-a and decline to answer questions about his disciplinary record or prior excessive force actions (id. ¶¶ 14-15).  Plaintiffs argue that inquiry in this area is relevant because of their claims of excessive force used against JDF by Beyer and the

---

[2]Also identified as the police station "on Bailey and Kensington," Docket No. 20, Am. Compl. ¶ 31.

pattern of excessive use of force tolerated by the City of Buffalo (id. ¶ 16).  They argue that New York Civil Rights Law § 50-a does not bar production in federal cases and, at most, provides a mechanism for production if ordered by this Court (id. ¶ 19; Docket No. 28, Pls. Memo. of Law at 2-4).

Defendants claim that the materials sought here are deemed confidential pursuant to New York Civil Rights Law § 50-a, asserting a "confidentiality privilege" under that law (Docket No. 33, Defs. Atty. Aff. ¶¶ 4-6).  Defendants recognize that the statute allows, after a sufficient showing by plaintiffs, that this Court could review the sought records in camera before determine whether (or to what extent) these records may be produced (id. ¶¶ 8, 9,10).  Otherwise, defendants "adamantly oppose" their production (id. ¶ 8).

In reply, plaintiffs note that they are aware of at least one use of force incident involving Beyer and two other incidents involving Lt. Leatherbarrow, concluding that information about those and similar incidents is material and relevant to their claims (Docket No. 34, Pls. Atty. Reply Decl. ¶¶ 6-8).  They deny that New York Civil Rights Law § 50-a bars discovery here, although this Court may use that statute's procedures in considering whether to order discovery (id. ¶ 10), and they deny that this statute creates a privilege (id. ¶ 11).

**DISCUSSION**

At issue here is the apparent ban under New York State law of producing a police officer's personnel or disciplinary records.  The New York Civil Rights Law requires either the "express written consent" of the officer involved or a Court Order before these confidential records can be released, N.Y. Civ. Rts. Law § 50-a(1).  Under that state statute, "prior to issuing such court order the judge must review all such requests and give interested parties the

4

opportunity to be heard.  No such order shall issue without a clear showing of facts sufficient to warrant the judge to request records for review," id. § 50-a(2); Mercado v. Division of N.Y. State Police, 989 F. Supp. 521, 522 (S.D.N.Y. 1998).  If a sufficient basis is found, these records are turned over to the Court under seal for in camera review and the Court will decide which of "those parts of the record found to be relevant and material [are to be made] available to the persons so requesting," N.Y. Civ. Rts. Law § 50-a(3).  Plaintiff thus needs to show the materiality and relevance of the individual defendants' personnel and disciplinary records to warrant this Court's in camera review before production to plaintiff, see Pierce v. Ottaway, No. 06CV644, 2009 U.S. Dist. LEXIS 21866, at *9-11 (W.D.N.Y. Mar. 18, 2009) (Curtin, J.); see also Martin v. Lamb, 122 F.R.D. 143, 147 (W.D.N.Y. 1988) (Fisher, Mag. J.).

But that statute does not create a privilege recognized by federal courts.  No federal rule prohibits discovery of police personnel or disciplinary files, King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) (Weinstein, Ch. J.); Pierce, supra, 2009 U.S. Dist. LEXIS 21866, at *10.  If considered privileged, this statute is only qualified in federal courts; this Court must balance plaintiffs' need for the information against the public's interest in disclosure or nondisclosure, Aguilar v. Immigration & Customs Enforcement, 259 F.R.D. 51, 56 (S.D.N.Y. 2009) (Maas, Mag. J.); Mercado v. Division of N.Y.S. Police, 989 F. Supp. 521, 522-23 (S.D.N.Y. 1998) (Grubin, Mag. J.) (production of disciplinary records in Title VII action where Hispanic officers allege disparate treatment from other officers, subject to entry into a confidentiality agreement if defendants desired).  The relevance of these documents also needs to be determined prior to any production "even if the defendant has not made a substantial showing of harm," Pierce, supra,

2009 U.S. Dist. LEXIS 21866, at *10; see Barrett v. City of N.Y., 237 F.R.D. 39, 41-42 (E.D.N.Y. 2006).

Here, plaintiffs have met the initial burden of showing materiality and relevance for their inquiry. Their Interrogatories and document demands go to their excessive force and supervisory liability claims.

Before deciding the relevance and balancing the interest in keeping these records confidential, this Court must review the personnel records in question in camera, Pierce, supra, 2009 U.S. Dist. LEXIS 21866, at *2, 9-10; Martin, supra, 122 F.R.D. at 147, 148. In Pierce, Judge Curtin found after in camera inspection that there was nothing "remotely relevant" to plaintiff's claims in the officers' personnel records, Pierce, supra, 2009 U.S. Dist. LEXIS 21866, at *10-11. Therefore, to determine relevance here (and whether these plaintiffs are to see these records), this Court **requires in camera review of defendants' personnel records** responsive to plaintiffs' demands.

CONCLUSION

For the reasons stated above, regarding so much of plaintiffs' motion to compel (Docket No. 28) seeking production of the individual defendant's personnel or disciplinary records, defendants **shall produce to the Court for in camera review defendants' personnel and disciplinary records** otherwise responsive to plaintiffs' demands. Defendants shall furnish these to the Chambers of the undersigned within **thirty (30) days** of entry of this Order. Following inspection of these documents, this Court will determine whether they are relevant to this action and should be produced to plaintiffs. Given the pending move of this Court, actual

6

delivery of these documents to Chambers must occur before November 10, 2011 (to 68 Court

Street), or after November 28, 2011 (to 2 Niagara Square), the dates when the Court will be open.

So Ordered.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
November 1, 2011